## JOHN HANCOCK *versus* SAMUEL HUBBARD.

**A decree of the Probate Court directing the distributive share of an heir who was indebted to the estate, to be paid over by the administrator, to the other heirs, on the ground of such indebtedness, is void; and the non-compliance with it, by the administrator, is therefore not a breach of his bond.**

THE facts in this case are sufficiently set forth in the opinion of the Court, which was delivered by

*June 26th*

SHAW C. J. This is an appeal from a decree of the Court of Probate for the county of Suffolk, allowing the fourth account of Samuel Hubbard, as guardian of Thomas Hancock, a person *non compos mentis*.

Hancock *v.* Hubbard.

By the case it appears, that John Hancock and Thomas Hancock were the sons and only heirs at law of Ebenezer Hancock deceased. J. G. Rogers, in 1821, was appointed administrator *de bonis non* of the estate of E. Hancock. E. Hancock, at the time of his decease, stood bound as indorser and surety for his son John, to a very large amount; and these debts the administrator was called upon to pay and did pay. For the sums thus paid, and for other sums due from John to his father, the administrator commenced an action and attached certain parcels of real estate and recovered a judgment for about $60,000 This execution was levied upon sundry parcels of real estate and, among the rest, upon one undivided half of a store situated in Merchant's Row, which had been devised to John and Thomas by their grandmother, with a provision, that if either should die without issue, the estate should go to the survivor. The year from this levy expired, and the estate was not redeemed. By an act of the legislature passed in February 1824, the city government of Boston were authorized to take and appropriate to public uses certain real estate therein described, for the purpose of widening and enlarging Faneuil Hall Market, with special provisions for appraising the value of such estate, with an ultimate trial by jury, if the parties should not agree. This act, § 4, provided, among other things, that in case any such real estate had belonged to a deceased person, whose estate remained unsettled, the amount awarded as damages should go to the administrator, to be accounted for, &c.

The estate in Merchants' row, which had been levied on by Rogers as administrator, was one of the estates taken by the city government, under the provisions of the above act. Rogers, as such administrator of an unsettled estate, applied to the Supreme Judicial Court in the manner provided by law, and such proceedings were had, that commissioners were appointed, and the damages assessed at $15,361·94 for the one half of such estate, so levied on by Rogers as administrator; and he obtained a judgment therefor, and received the money of the city. At this time all the debts due from the estate of E. Hancock were paid, and the property held by the administrator, was held for the benefit of the heirs at law. In this state of

things, Hubbard, as guardian of one of those heirs, Thomas Hancock, applied to the administrator to pay over one half of the money thus received of the city to the use of his ward as such heir, and he hesitated and denied the right of the guardian; yet he did pay over the one half, and charge it in his administration account and Hubbard credited it in his guardianship account. Some delay of further proceedings was occasioned by a claim interposed by the widow, which was finally decided against her, at the March term, 1829. Soon after that decision, in April of the same year, Hubbard applied by petition to the Probate Court, setting forth, that John Hancock was still a large debtor by judgment to his father's estate, that if this debt were paid, Thomas would be entitled, as his distributive share, to an amount larger than the whole amount of the property, real and personal, in the hands of the administrator, and praying that, on this ground, all the real and personal property in the hands of the administrator might be assigned to Thomas by way of distributive share. After various continuances, on the 26th of September, 1829, a decree was passed, reciting such indebtedness of John Hancock, and directing the whole of the real and personal estate to be assigned to Thomas as his distributive share. This decree also directed, that in case the administrator should fail to comply with this decree, the administration bond should be delivered to the guardian of Thomas, to be put in suit.

This decree also confirmed and allowed the account of the administrator, Rogers, in which he had claimed credit for $ 7500, the one half of the proceeds of the estate taken by the city, which was the share of Thomas, of the damages thus allowed, paid in advance of a decree of distribution, on the requisition of Hubbard, guardian of Thomas, the heir. Under the decree, Hubbard obtained of Rogers, at divers time, personal property to the amount of $ 1400 and no more. The bond of the administrator was not put in suit.

It further appears, that, in or about April 1829, Rogers became insolvent, and has ever since remained so, that the sureties on his administration bond for $ 10,000, were Abigail Hall, who is since deceased, and whose sole heir Rogers is,

and Daniel D. Rogers, who died in March, 1825, leaving a considerable amount of real and personal property.

In settling his guardianship account, Hubbard has credited his ward with the $7500, half of the proceeds of the land taken by the city and received of the administrator in anticipation of a decree of distribution, and also with the $1400 collected in small sums afterwards; but he has not credited the $7500 ordered by the decree of distribution to be paid, but not paid. John Hancock, as the presumptive heir at law of Thomas Hancock, insisted, in the court below, that Hubbard, the guardian, should be held to charge himself with this other sum of $7500 with interest, on the ground, that it was the duty of Rogers as such administrator to pay this sum, that if he failed to do so on demand, it was a breach of his administration bond, for which his sureties were responsible, that although Daniel D. Rogers, one of the sureties, had been dead, and the settlement of his estate closed by the lapse of four years, still a suit might have been brought within one year after a breach of the bond, against his heirs or devisees, having property sufficient to respond in this behalf, that having failed to commence such suit, he had made himself personally responsible for this amount, and ought to be decreed to charge himself with that sum accordingly. This claim was disallowed in the Probate Court, whereupon John Hancock, as the heir presumptive and *prochein ami* of the *non compos* ward, took an appeal to this Court. The first reason of appeal is; "Because the said Hubbard, guardian as aforesaid, hath not charged himself in said account, with the sum of $7842," &c. Several other reasons are in form assigned, setting forth somewhat more at large, the facts and grounds on which the allowance of such sum is claimed, but all resulting in a demand that this item should be allowed.

Many questions have been argued in this cause, upon which it will not be necessary for the Court to give an opinion; and I shall barely allude to them to indicate the course of the discussion.

It has been contended, that John Hancock, under the will of his grandmother, took a contingent and not an absolute estate, and that the levy on that estate did not vest the fee in the

administrator, although the city government recognized his title as good ; and that Rogers, at the time of the taking of the estate by the city, was not the administrator of an unsettled estate, within the meaning of the statute ; although, as he obtained a judgment as such administrator, and the city government paid him under the authority of such a judgment, it would be difficult to maintain, either that this was not a good payment, or that Rogers was not accountable for the sum so received in his capacity of administrator.

It has also been contended, that as the administrator, at the time he gave his bond with sureties, was responsible only for the personal estate, and for such real estate as should be sold under a license for the payment of debts, if by a special act of legislation another sum was intrusted to him, by a conversion of real into personal estate, in a manner not contemplated when the bond was given, on principles of common law, the sureties could not be responsible for this increased duty, and more especially, as the statute, under which this estate was taken, provided that the proceeds of such estate, in the hands of an administrator, should be subject to the same disposition, as the surplus of real estate sold by administrators for the payment of debts, thereby implying, that a separate bond shall be given, to account for such surplus, the sureties on the general administration bond not being liable therefor.

These questions are entitled to great consideration, but we pass them over without any opinion, because we are satisfied, that, upon another ground, the claim to charge the guardian with the sum in question, cannot be supported. The *gravamen* of the complaint is, that the guardian did not charge himself with $ 7842, being the one half of the money received by Rogers, administrator, of the city government ; not that the guardian received this sum of the administrator, but that he had it in his power to collect it, and failed to do so, and, therefore, ought himself to become responsible in the same manner as if he had in fact received it. This question is therefore to be examined.

Supposing all other questions settled in favor of the complainant, that John Hancock was seised of an absolute estate in the store on Merchants' row, that the levy was good and vested

Hancock v. Hubbard.

a fee in the administrator in trust for the heirs, that he remained seised of the estate, in his representative capacity as the administrator of an unsettled estate, and rightfully received the money under a judgment from the city, and that his sureties were responsible for his official conduct, as well in the disposition of the money thus received, as in his other official acts, the question still recurs, whether the guardian could legally have enforced the payment of the sum in question. This sum is the one half of the money in the hands of Rogers as administrator, which would, under an ordinary decree of distribution, and if John Hancock had not been a debtor to his father's estate, have been coming to him. The moiety coming to Thomas, in his own right, had, in fact, been paid at the request of the guardian, and credited, and whether this payment was made under a decree of distribution or without such a decree, makes no difference to the ward. He has the benefit of it in his account. The *gravamen* of the complaint is, that the guardian did not obtain for his ward, the moiety originally coming to John Hancock, on the ground that he was a debtor to the estate of his father, Ebenezer, and that Thomas, therefore, was entitled to the whole, in the nature of a set-off; since he would be entitled to receive as much in another form, if John's debt to his father's estate was paid.

Such was the ground upon which the probate decree of September 1829 was passed. But we think it is impossible that such a decree can be sanctioned by the law. In the case of *Procter* v. *Newhall,* 17 Mass. R. 93, it was held, that an administrator has no lien on the estate of an heir, in security of a general debt due from such heir. The same thing is true as a general proposition, that an administrator has no lien upon the personal estate coming to an heir by distribution, in security of a debt due from the heir, where there is nothing to show that such debt was an advancement. Whether there is a qualified lien arising from the right of set-off, which might arise when the heir should sue for his distributive share, or an equitable lien to be enforced in equity, as a trust arising in the settlement of estates, are questions not now necessary to be decided. It is clear, we think, that a Court of Probate cannot take notice of a debt so due from an heir to the estate, and in

effect direct the payment of it in the form of a decree of distribution. It is a matter not within the jurisdiction of that court; and a decree thus directing the distributive share of one heir to be paid over to another, on the ground of compelling payment of a debt due by such distributee to the estate, is wholly void. It is, in this respect, similar to a decree directing an administrator to pay a debt, which is a subject not within the probate jurisdiction, and is therefore void, and imposes no duty on the administrator to pay such debt; and, therefore, a refusal to pay it on demand, is not a default in the discharge of his official duty, or a breach of his bond. *Dawes* v. *Head*, 3 Pick. 128; *Cowdin* v. *Perry*, 11 Pick. 503.

Under this decree, the administrator was not bound to pay over the distributive share of John to the guardian of Thomas; a refusal, therefore to pay such share on demand was not a default in the official duty of the administrator, amounting to a breach of the bond, and no action could have been maintained against the sureties. It does not appear, therefore, that the guardian could have recovered this sum for his ward, in the mode suggested under this decree, or that he is chargeable with the negligence imputed to him, or that he is liable for the said sum of $7842, as a sum which, with due diligence, he might have recovered.

*Decree of the Court of Probate affirmed.*

*S. D. Ward* and *Hancock*, for the appellant.

*Aylwin* and *C. G. Loring*, for the appellee.